The next banner on our calendar is United States v. Anthony Campbell. Good morning. Good morning, Your Honors. I represent Anthony Campbell. We appeal the denial of his motion to dismiss the indictment for illegal reentry on the ground that his removal was fundamentally unfair under 18 U.S.C. 1326d. Although he had a viable claim for a stopple of deportation, the immigration judge told him that he had no claim unless he could prove he was a citizen with a passport. Was it a viable claim? Is it a viable claim? Yes, Your Honor. That's what I'd like to address right now. He had a viable claim of a stopple. Mr. Campbell had received an immigrant visa as a child of his adopted mother who was a naturalized citizen when he was 11 years old. The visa incorrectly classified him as IR2, signifying that he was the child of a U.S. citizen under 1101b1, entitled to automatic citizenship under Section 1432. Is that just an administrative error in your view? I don't know. Probably. I mean, we're not contending that it was deliberate. But it was an error. It doesn't have to be deliberate. It was an egregious error because it was highly consequential. It had catastrophic consequences for Mr. Campbell. With IR2 status, he derived automatic citizenship, but his actual status as an orphan adopted abroad required that an application be filed. And this was, as we understand, a pro forma application. It would have been granted before he turned 18. His mother never filed for him. And the facts — Adoptive aunt, you mean? Pardon? Adoptive aunt. Yes, his adopted mother who was originally his aunt, yes. Never filed? Never filed. Because she understood the significance of IR2? Are you saying? Yes. And the facts that raise the compelling inference that she relied on that visa are the following. First of all, this visa is meant to be relied on. A visa classification confer status is an official document that is intended to be relied upon. And anyone with knowledge of the codes, being told what that visa code was or looking at that visa code, any INS official who she called up on the phone, a lawyer, even maybe someone at the adoption agency, would have told her that that signified that he derived automatic citizenship. Is there any evidence that she talked to anyone about it? Well, there isn't evidence yet, but the court denied a hearing. This is the problem. Mrs. Campbell, the adopted mother, is dead. But at a hearing, Anthony Campbell could testify. His wife, who's known him since he was 14, would testify. There's an affidavit from Mr. Campbell. There is, that he always believed, that he always believed, understood that he was a citizen, that he was shocked, absolutely shocked, to learn in 2006 for the first time that he was not, that this was a mistake. What would he testify about that's different from the affidavit? Well, he would testify about what his mother told him. Also, there are other documents that were requested and would be requested again in the file. For example, all the application papers. What the file of his sister, his sister who was also adopted, looked like. And a really important fact here is that, you know, the INS itself — With his sister, isn't that also available? Well, he filed a motion and it was denied on the papers. He asked for all this. In the argument, he asked for getting more documents from the INS, exploring this further, having a full hearing, a full factual hearing, and the court denied it. We don't know if, for example, the sister has had an IR-2 designation as opposed to an IR-3 designation. Exactly, or whether anything was ever filed for her or anything like that. Because a really important fact here that's a highly, like, compelling circumstantial fact is that the INS itself determined — and it had the whole file. It knew everything there was to know in the file. It determined that Mr. Campbell was a citizen in 1998 based on its own mistake. So if it was — if the INS couldn't figure out there was a mistake, how could Mrs. Campbell be expected to know there was a mistake? So this is the kind of affirmative, egregious mistake that this Court has held as grounds for estoppel in Cornell-Rodriguez. Now, the government makes some contentions, some factual quibbles. We and the Supreme Court seem to have cut back on Cornell-Rodriguez. Well, Your Honor, I don't think that's exactly true. The government relies on Panagillion, but Panagillion is a totally different kind of case. It's not an estoppel of deportation. It's asking the Court to grant citizenship to a whole class of immigrants, of Philippine immigrants, by estoppel. And the Court held citizenship cannot be conferred by estoppel. Also, that case involved estoppel of a deadline that Congress had reaffirmed. And so Pooler mentioned the validity of the claim. What is the affirmative misconduct here precisely? In other words, you say — you suggest that it might have been the initial error? The initial error is the affirmative. That's the affirmative misconduct. The affirmative misconduct. Egregious, affirmative misconduct. Yes. Why isn't that better classified as negligence? That has dramatic consequences, but the negligent act itself is just a negligent act. Well, because if you look at the cases, the cases affirming estoppel, upholding — finding that estoppel happened, like Cornell, Moser, and Podea, involve — all they involve is an egregious mistake. None of them involve deliberate conduct. Affirmative misconduct does not mean deliberate. It does not mean something terrible. It just means a mistake in which the immigrant was told something that was absolutely incorrect that had serious consequences if he relied on that. They relied on that with serious consequences. That's in Cornell. That's in Podea. And that's in Moser. The subsequent cases that the Court relies on to argue that it's been narrowed actually don't narrow it. They are factually distinct. In every one of those cases, and that's Droz, Rojas, Reyes, and Ahmed, Ahmed v. Holder, this Court reaffirmed the principle that estoppel does apply where there is an affirmative misleading, affirmative misconduct, affirmative mistake that has consequences. But found — It would seem to me affirmative implies some knowledge or intent to create — But it does not. And that's what Cornell says. Cornell says it does not — and I'll quote — it does not require deliberate misconduct. In Cornell, it was an unintentional injustice. No. Unintentional injustice. The Supreme Court's — Judge Kaufman described it as the government's flouting of a mandatory regulation. That's a little different from an administrative error, which — But they — The way you characterized it. Well, they also said it was unintentional. Unintentional injustices. It was — in that case, it was — this was — this is, I think, a worse — 304. 304. Page 304. And what happened in Cornell was that they — it could be arguably — that would be more negligent than this. This was an affirmative misclassification. Writing in two different places, stamping and writing on the visa, the wrong code. The absolutely incorrect code, which has serious consequences. And Cornell, the affirmative misconduct, the affirmative misconduct was simply the failure to warn. It was the failure to warn. That was arguably more kind of a lapse or negligence than what was done here, where the consular agent was charged, under the regulations, with putting the correct code on the visa and put the incorrect code on. Thank you. You have reserved time. I see my time. And my time is up. Okay. Thank you. Good morning, Honors. My name is Temidai Agenga-Williams, and I'm an assistant United States attorney, and I represent the United States in this appeal. I also represented the government before the trial court. The government respectfully submits that the district court correctly denied the defendant's motion to dismiss the indictment. And that is because, at its core, the defendant cannot establish a claim of equitable estoppel. Turning to, I think, the two critical documents in this case are, one, the documented A-20, which is the immigration, visa, and alien registration form that has the incorrect classification, as well as the documented A-43, which is the notice of approval that went to the defendant's adoptive mother. Starting first with A-20. Is that the 1998 document? No, Your Honor, that is a 1983 document. That document told Ms. Campbell that the INS had approved her application to basically bring the defendant to the United States. And what's critical about that document in 1983, which is the one document we can actually infer she received, and it's just how she would have known that the application was approved, and it's addressed to her, that document includes a correct classification. That document has the 101B1F classification, which any one in the immigration field would know refers to a child of an adoptive parent, not a child of a biological parent. Moreover, that's the only document we can have confidence she actually received. Turning to the document that has the IR-2 misclassification, I think on its face, there is not any support that Ms. Campbell would have relied on this document, which would be critical to establishing an equitable estoppel claim. First off, the IR-2 classification, as conceded before the lower court, the defendant conceded, no layperson would know what IR-2 meant. Accordingly, no layperson would ever rely on IR-2 if they would have no basis to know what that meant. We don't know whether this woman sought counsel when she got this. We don't know that, Your Honor, but if she were to sought counsel, presumably immigration counsel would know that IR-2 would ask questions about the nature of relationship with the defendant. Moreover, on the face of the document, it indicates the mother's name is Yvonne. It indicates the father's name is Cyril. Neither of those would have been true with the individual bringing the document. Namely, the defendant's adoptive mother's name is Norma. So on the face of the document, any professional who she would have taken this document to would immediately have known that there were errors here. Moreover, on the face of the document, in the middle of the page, it indicates that about this visa, that upon arrival in the United States, it must be surrendered to a United States immigration officer. So I think that undercuts even the presumption that she ever would have received this document to rely upon it. The document which was produced to the defendant in discovery from the government's internal files, not something that the defendant had, I think undercuts the argument that she ever relied upon it. Because on its face, it indicates that this visa must be surrendered to immigration officials upon entry into the U.S., indicating she wouldn't even have had this document. And if she didn't have this document, then she couldn't have relied on it. And therefore, the defendant would not have had an equitable estoppel claim. And yet Mr. Campbell, for years, thought he was a citizen. Your Honor, I think that's not factually surprising. Individuals who come here as children, who often haven't had to engage with their immigration status, may themselves presume that they are United States citizens, but those aren't the actual legal facts. Even more strikingly, the government thought he was a citizen as of 1998, when it decided not to release him from removal proceedings. Is that right? There is an internal notification, an internal site, yes, Your Honor, that indicates that the government had erroneously concluded that. But I think court... So I think the argument is, if your government and mine can conclude erroneously or not that someone is a citizen based on the same documentation, then why is it a stretch of the imagination to conclude that his adoptive mother or anybody else could arrive at a similar conclusion? Well, I think, Your Honor, with regard to the 1998 notification or note, there is no connection between that single internal electronic log and what this document is. What else could it be? That I don't know, Your Honor. Well, that's, but that part of the argument is that we don't know. We need more or the district court needed more information. Well, I think respectfully, Your Honor, the district court had sufficient information because the facts that are relevant are as to whether Ms. Campbell was misled through affirmative conduct to her own detriment, which meant that by the time the defendant was 18, would she have acted differently than she otherwise did? So what happened in 1998 is not relevant to what would have happened around 1990 when the defendant would have turned 18. So the question is, what about these documents here, whether these documents affirmatively misled Ms. Campbell, not whether the government itself had an erroneous understanding? And the one document that we can be assured that she received correctly classifies the defendant as the child of an adopted parent, which if she had taken that document, the one document we know she received to any legal professional, they would have indicated that additional action was taken for him to be naturalized. What page is that again? That's at A43, Your Honor. And she could have done that then. She could have had him naturalized when he was before he turned 18, correct? Yes. She could have. She did not, but she could have. And on the face of the notice of approval at A43, and that first paragraph indicates there that the approval of the petition confers upon the beneficiary an appropriate classification. That classification, 101B1F, is correct. That indicates in the INS code that the defendant is the child of an adopted parent. Moreover, this document is from the INS. The visa that indicates the incorrect classification is from the ‑‑ I'm sorry, Your Honor? State Department. It's from the State Department, Your Honor. I think that is a critical distinction. So on the document indicating the incorrect classification, it's a document from the State Department that has a clerical error, and on its face indicates that this very visa must be surrendered to an immigration officer. So I think it undercuts any argument that, one, she ever would have had this document, which was first produced in discovery in the criminal matter, or, two, that she would have reasonably relied on it to Mr. Campbell's detriment. The one document that we know she did have is fully correct on its face, and if the Court were to continue reading in that first paragraph, also indicates that eligibility for admission or adjustment is determined only when an application, therefore, is made to an immigration officer. So that on its face indicates that further action is required to adjust one's status, and that's the one document we know in the record she would have had. So I think the record that's relevant here was settled by 1980, which is when the defendant would have turned 18. What happened subsequently, or his own understanding, would be relevant for the Court's determination as to whether he has an equitable or stoppable argument in this matter. And I think further, speaking to the fundamental fairness of the deportation proceedings, the burden would have been upon – was upon the defendant to prove his citizenship. So I think if we're – if the Court is looking to whether or not those proceedings were fundamentally fair, it would have been his burden. And at that time – How long ago were those proceedings? Just remind me. Those happened at approximately 2006, Your Honor. And there were, I believe, approximately five different hearings that occurred, multiple continuances that allowed for the defendant to obtain any documentary support. And even at those proceedings, the defendant was unable to get in contact with the adoptive mother. So even at that time, he couldn't establish – he had – the facts were already set in stone. He couldn't access any additional facts. His mother wasn't available at that point. Moreover, the facts that were relevant were in 1984. So I think the ineffective assistance of counsel claims fail for that reason. The fundamental fairness of the proceedings are not undercut for that reason. And yet – so unless the Court has any further questions, the Court will – the government will rely on its papers. Thank you, Judge. I'll tell you reserved minutes for rebuttal. These latest arguments that my opponent has come up with are just not accurate. First of all, we can be sure that Mrs. Campbell, Norma Campbell, and 11-year-old Anthony received the visa. There is no doubt they received the visa. He needed the visa to enter the country. He said that the den has to be turned over. I don't know what that means. That's something that would have to be factually – It means that when you arrive at the port of entry, you turn the visa over to the folks in immigration. They take it, and then they issue something else. But they have to – they must have to make a copy and give it back to you. Because everywhere anyone travels, they have to keep their visa with them. If anyone's ever traveled with a visa, you know that your visa is with you in the passport. It's not taken away. Otherwise, you have no right to be here. That was his right to be here. That was the operative document that gave him a right to be here. Not the letter sent to Mrs. Campbell saying we've approved you under another code that she wouldn't have known what it meant. The code that they stamped on his visa was the official code. And if he – if they took his visa, they would have to give him back a copy or give him another card, a smaller version of it, to put in his passport that had the same code on it. That was his code. That was his official classification. And, of course, they had it. We just need to remand this to the district court? I think so. To the district court for it to make the findings that have been essentially argued? Yes, Your Honor. I think we do have to remand it. I think there was an insufficient record for the court to deny this motion. And there needs to be a lot more fleshed out, including – In order to do that, we would have to agree with you that the initial error, the IR2 designation, constituted a form of affirmative misconduct that could result in estoppel of the government. Yes, Your Honor. And I think that is clearly established by Corneille, Moser, and Podea. And if you look at the later cases, Droz, Ahmed, and Rojas, those cases involve negligence of a very mild kind. Like delay. Delay on an application. Not writing a regulation that the court found wasn't – that the agency wasn't required to write. It's nothing like an absolutely incorrect affirmative incorrect classification that has life consequences. Thank you. And if I could just – I have a few more seconds. As I was preparing for this argument, I believe I uncovered the fact that, in fact, IR2 probably doesn't only refer to biological children. It probably includes the one class of adopted children that is entitled to automatic citizenship, which the government concedes. In its brief under 1431, there is one category of adopted child that gets automatic derived citizenship, and that's where the child is living with the mother, the adopted mother in the United States, when she naturalizes. So that's another issue that was probably – When did Norma naturalize? Pardon me? When did Norma – She naturalized before she brought Anthony over. Oh, so – Right. So he wouldn't be eligible? He wouldn't have qualified. But IR2 would not even flag that it was only biological children. I talked to an immigration lawyer. I looked up the codes, and it looks like that code includes that category also. It includes – Are you saying even though he was not in the country living with her when she naturalized, he's a citizen by virtue of her having naturalized? No, I'm saying he doesn't – he did not qualify. He was miscoded. He should have been IR3, which is an orphan adopted abroad. But they miscoded him as IR2. But the government's whole argument, well, anybody would have known if they knew he was adopted. No, the INS knew he was adopted. This is what got me going on this, because I was trying to figure out how the INS could have made the mistake. The INS knew he was adopted, and they saw the IR2 code, and no red flags went off, because, in fact, I think IR2 does include that one class of adopted children. So that depended on facts that were not a clear – Right, right. And we'd have to have an expert, an immigration expert, testify about what these codes meant. Thank you. Thank you both for this interesting case. We'll reserve decision. Thank you. That concludes our argument calendar, so I will ask the clerk to adjourn court. Court is adjourned.